IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

NJH, a minor child, by and through
her next friend, Patrice Boyles,

    Plaintiff,
v.                                                                      CASE NO. 1:08-cv-00062-MP-AK

NORMA NICKERSON,
JUDY PARKS,
PAM VIERA,

    Defendants.
_____/

**O R D E R**

This matter is before the Court on the following motions:

- Doc. 14, Consent Motion to Extend Time to Respond to Complaint
- Doc. 15, Motion to Withdraw as Attorney
- Doc. 18, Motion to Dismiss, filed by Judy Parks, to which Plaintiff responded, Doc. 33.
- Doc. 19, Motion to Dismiss, filed by Pam Viera, to which Plaintiff responded, Doc. 34
- Doc. 21, Motion to Dismiss, filed by Norma Nickerson, to which Plaintiff responded, Doc. 32
- Doc. 24, Motion to Stay Discovery, filed by all three defendants. The time for responding has not yet run.

The motion to extend time (doc. 14) is granted nunc pro tunc. The motion to withdraw as attorney (doc. 15) is granted: Robert Buchanan shall remain the attorney for Judy Parks, but shall be replaced by J. Ray Poole as attorney for Norma Nickerson and by James Kloss as attorney for Pam Viera.

We turn now to the motions to dismiss. This case involves a complaint against three Florida Department of Children and Family Services employees alleging that they were deliberately indifferent to the constitutional rights of a foster child when they placed that child in

a foster home with two other children known to be sexually aggressive toward other children. The foster child was allegedly repeatedly sexually assaulted by the other two children while in the home. The defendants have moved to dismiss the complaint on qualified immunity grounds.

The following is the chronology of events in this case, according to the allegations of the complaint. In late January, 1999, two brothers, A.P. and S.P., were placed into the custody of the Florida Department of Children and Family Services ("DCF"). Complaint, ¶ 39. A.P. was seven and S.P. was four. Id. ¶ 4. A month later, defendant Nickerson became their Family Services Counselor, Id. ¶ 40, and was told by another DCF employee that A.P. and S.P. "had sexually acted out with each [other] and had sexually assaulted a younger sibling." Defendant Nickerson, it is alleged, also came to know of the boys' "history of sexual abuse and sexually aggressive behavior toward other children" Id. ¶¶ 40-41. The Complaint does not specify into which foster home S.P. and A.P. were placed at that time, but it alleges that the two boys were placed in the same house. See id. ¶ 48.

Two months later, on May 10, 1999, Defendant Parks, the Operations Program Administrator at DCF, was told that S.P. had been caught performing oral sex on a younger child in the bathroom at the daycare he attended. He allegedly showed no remorse when confronted about this behavior. Id. ¶ 44. In fact, Parks learned that S.P. reported that he had learned his sexually aggressive behavior from his older brother A.P. Id. ¶ 45.

Five months after that, in October of 1999, Defendant Viera was assigned as A.P. and S.P.'s Family Services Counselor. Also, at around the same time, A.P. was removed from the foster home he had been in with S.P. Id. ¶ 48. The removal was at the request of his then foster parents who reported that A.P. repeatedly sexually assaulted S.P., displayed sexually aggressive

behavior toward another child in the foster home, and attempted "to lure other children into the wood to perform sexual acts on them." Id. A.P. was moved into a new foster home, which the Complaint calls the "E" foster home at that time. Defendant Viera knew that A.P. was moved from his prior foster home to the E foster home because of his sexually aggressive behavior toward younger children. Id. ¶ 50.

Incredibly, the E foster home apparently had younger children living there at the time of A.P.'s placement. A month after A.P.'s placement in the E foster home, the E foster mother contacted Defendant Viera and "reported that she had been told that A.P. should not be residing with younger children because of his background of sexually aggressive behavior and that the younger children would need to be removed from the 'E' Foster Home." Id. ¶ 52. However, nothing was done; no children were moved. Id. ¶ 53. In fact, A.P. was allowed to share a bedroom with a younger child. Id.

In the meantime, Defendant Nickerson, who had been A.P. and S.P.'s Family Services Counselor, became Plaintiff N.J.H.'s Family Services Counselor. Id. ¶ 55. In November of 1999 -- only a month after A.P. had been removed from one foster home and placed in the E foster home because of his sexually aggressive behavior -- Defendant Nickerson authorized N.J.H to be placed in the E foster home with A.P. N.J.H, who is female, was four years old at the time. Id. ¶ 54.

At around the same time, in November of 1999, the E foster mother informed Parks and Viera that A.P. was "violent and aggressive" and "'out of control.'" Id. ¶ 60. In December of 1999, Viera reviewed a psychological report that detailed the sexual assaults against A.P. and S.P., their sexually aggressive behavior against other foster children "in their foster home," and

their sexually aggressive behavior toward another child in daycare and at the church. Id. ¶ 61. A.P. was not removed from the home.

Moreover, on February 10, 2000, Defendant Viera decide to place S.P. in the E foster home along with his brother A.P., N.J.H. and another younger child. Five days later, Defendant Viera was told by S.P.'s therapist that he had been "sexually acting out" in the E foster home. Then, on March 3, 2000, Defendant Viera was advised by the foster mother that S.P. was sexually aggressive toward A.P. in a public place in the presence of several adults. Eight days later, Defendants Nickerson and Viera were advised by the foster mother of "a sexual incident between S.P. and Plaintiff N.J.H. behind the shed located at the foster home, which assault N.J.H. later reported included vaginal penetration, despite the presence of an adult in the yard at the time." Id. ¶ 67. On that same day, the foster mother also informed Viera that S.P. had been sexually aggressive toward other foster children in the backyard despite the presence of nearby adults. Id. ¶ 70.

Despite even these reports, A.P., S.P. and N.J.H. were allowed to live together in the E foster home. In fact, all three remained there until January of 2001, ten months after the March 2000 assault report. N.J.H. was finally removed on January 26, 2001. During the intervening ten months, however, it is alleged that A.P. and S.P. repeatedly sexually assaulted N.J.H., including physical groping and vaginal penetration. Id. ¶ 80-81.

N.J.H., through her next friend, filed a three-count civil rights complaint (one count against each defendant in her individual capacity) alleging that the defendants were deliberately indifferent to her constitutional right to personal safety in her foster home. The defendants have moved to dismiss the complaint, asserting that each defendant is entitled to qualified immunity.

A district court must dismiss a complaint under Fed.R.Civ.P. 12(b)(6) when the complaint's allegations, on their face, show that an affirmative defense bars recovery on the claim. Marsh v. Butler County, 268 F.3d 1014, 1022 (11th Cir.2001). Once the affirmative defense of qualified immunity is asserted, "[u]nless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." Id. (quoting Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985)). Without such allegations, the district court should grant qualified immunity at the motion to dismiss stage. See Gonzalez v. Reno, 325 F.3d 1228, 1233 (11th Cir.2003). Thus, if Defendants in this case are entitled to qualified immunity, the district court should grant their motions to dismiss. See, e.g., Cottone, 326 F.3d at 1357.

The parties agree that Defendants were acting within the scope of their discretionary authority as government officials. They also agree that NJH had a clearly established right to physical safety in her foster home. Thus, in determining the question of qualified immunity, the only issue for the Court to decide is whether the complaint alleges facts that could support a finding that Defendants were deliberately indifferent to NJH's right to physical safety. See Taylor v. Ledbetter, 818 F.2d 791, 797 (11th Cir.1987).

The Defendants were deliberately indifferent only if they disregarded a risk of harm of which they were actually aware or they deliberately failed to learn of that risk. Ray v. Foltz, 370 F.3d 1079, 1083-84 (11th Cir.2004). That is, in order to establish deliberate indifference , the plaintiff must be able to allege and prove at trial that "(1) [the defendant] was objectively aware of a risk of serious harm; (2) [the defendant] recklessly disregarded the risk of harm; and (3) this

Case 1:08-cv-00062-MP-AK    Document 38    Filed 06/18/08    Page 6 of 8

Page 6 of 8

conduct was more than merely negligent." Id. at 1083 (citing McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir.1999)). Thus, to determine if Defendants are entitled to qualified immunity, we must examine the complaint to see if it claims that Defendants had actual knowledge of or deliberately failed to discover the serious risk of harm to NJH of the types of injuries she sustained.

The Court concludes that NJH has alleged each of the above elements. First, as set out above, all three defendants were made repeatedly aware of the two boys' sexually aggressive behavior, both outside the E foster home and inside the E foster home. As of March of 2000, Viera, as S.P.'s Family Services Counselor, and Nickerson, as NJH's Family Service Counselor, and Parks, as their boss, each had actual knowledge that the sexually aggressive behavior had been targeted on NJH. Complaint ¶ 67. In fact, in August 2000, Viera and Parks authored a report setting out the history of A.P. and S.P.'s sexually aggressive behavior. Id. at ¶ 76.

Second, it is alleged that each defendant had the opportunity and duty to take corrective action and failed to do, recklessly disregarding the risk of sexual assaults against NJH. It is clear from the Complaint that A.P., S.P. and NJH could be moved into different foster homes, but defendants failed to do so. Finally, because of the degree of actual knowledge of the defendants, including the reports of foster parents and the unheeded request of the foster mother to remove the younger children from the E foster home, the actions of the defendants, if proven, rise above mere negligence.

A comparison with Nichols v. Maynard, 204 Fed.Appx. 826 (11th Cir. 2006), a case in which qualified immunity was found, is instructive. In Nichols, the panel indicated what would be required to prove deliberate indifference in a context like the instant case, but found that it

was lacking in that case. All the elements required by Nichols can be found in the instant case, however.

> For example, in Nichols, the panel complained that
>
> The complaint in no way alleges facts that would indicate that [the abusing child] had been sexually aggressive or otherwise violent with another child. In short, the records indicate that [abusing child's] part in [prior] sexual abuse had been as a victim, not an aggressor. Thus, the allegation that the information in the DCF records alerted Defendants to a serious risk of harm to [abused child] is conclusory and without basis in the factual allegations.

Id. at 829. In the instant case, however, the allegation is that Defendants Nickerson and Viera were the Family Service Counselors of the two boys and specifically knew of sexually aggressive behavior toward other children, including a younger sibling. Defendant Parks, as Operations Program Administrator, is alleged to have known about the sexually aggressive behavior of the two boys. Moreover, all three knew specifically that the sexually aggressive behavior had been directed at the Plaintiff herself.

> Also, in Nichols, the panel commended the quick response of DCF officials:
>
> Once DCF received a report that [abusing child] sexually molested [abused child] - about 20 months after [abusing child] was first placed in the foster home - the agency removed [abusing child] and conducted an investigation into the incident. These facts do not show that Defendants disregarded the risk. Rather, they show that Defendants were, in fact, concerned about [abused child's] physical safety and took steps to prevent further harm.

Id. In contrast, the DCF employees in the instant case learned of an actual instance of sexual aggression against NJH in March of 2000 and yet inexplicably waited ten months before removing NJH from the same home as A.P. and S.P.

> In sum, the Court concludes that the Plaintiff has sufficiently alleged the deliberate

indifference of each defendant to her constitutional rights to be physically safe in her foster home.  Thus, application of qualified immunity is not proper at this stage, and the motions to dismiss should be denied.

Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

- The motion to extend time, doc. 14, is granted nunc pro tunc.
- The motion to withdraw as counsel, doc. 15, is granted, as noted above.
- The motions to dismiss, docs. 18,19, and 21, are denied.
- The motion to stay discovery (doc. 24) and the joint report (doc. 25) shall be taken up in a telephone status conference which will be set by separate notice.

**DONE AND ORDERED** this  *18th*   day of June, 2008

*s/Maurice M. Paul*
Maurice M. Paul, Senior District Judge